UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WANACHEK MINK RANCH and SMITH
MINK RANCH CORPORATION, on behalf of
themselves and all others similarly situated,
Plaintiffs,

v.

ALASKA BROKERAGE INTERNATIONAL,
INC., et al.,

Defendants.

CASE NO. C06-089RSM

ORDER CONTINUING MOTIONS TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION

This matter is before the Court for a ruling on several individual defendants' motions to dismiss for lack of personal jurisdiction. Dkt. ## 133, 138. Subsequent to the filing of the motions, the parties stipulated to dismissal of certain of the movant defendants, without prejudice. Dkt. # 157. However, as to individual defendants Frank Zilberkweit and Stephen Fein, plaintiffs have opposed dismissal. Dkt. # 152. Having fully considered the parties' memoranda and applicable case law, the Court has determined to continue both motions to allow for a limited period of jurisdictional discovery.

FACTUAL BACKGROUND

The plaintiff mink ranchers filed this class action on behalf of all persons "who sold unprocessed animal furs . . . at auction in the United States directly to Defendants or their co-conspirators, predecessors, or controlled subsidiaries . . . " between June 1, 2000 and June 1, 2004. Amended

ORDER CONTINUING MOTIONS TO
DISMISS - 1

Complaint, Dkt. # 57, ¶ 1. They allege that the defendants conspired to keep fur prices at an artificially low level at the American Legends Auctions during those years, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. American Legends Auctions is an annual fur auction held in Seattle, Washington. Complaint, Dkt. # 57, ¶¶ 49, 51. Plaintiffs further allege that two of the defendants named in the complaint, namely Alaska Brokerage International, Inc., and David Karsch, were indicted in this district and entered pleas of nolo contendere and guilty, respectively, to the charge of conspiracy to restrain trade in violation the Sherman Act. Amended Complaint, ¶¶ 56-60. *See, United States of America v. Alaska Brokerage International, Inc., et al.*, CR06-011JLR, Dkt. ## 1, 95, 100, 102. Plaintiffs filed this civil action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C.§§ 15 and 26, to recover treble damages for injuries incurred by plaintiffs from defendants' alleged conspiracy. Amended Complaint, Dkt. # 57, ¶ 3.

The allegations in the Amended Complaint which relate to the movant defendants are as follows:

> 23. Defendant Fein & Co., Ltd. ("Fein") is a foreign business entity with its principal place of business at 10-14 Hewett Street, London EC4 3HA, United Kingdom. Fein is a Fur broker and dealer.
>
> 24. Defendant Steven [sic] Fein is an individual, on information and belief, residing in London, United Kingdom, who at all relevant times was an authorized representative and agent of Defendant Fein & Co.
>
> . . . .
>
> 27. Defendant Polar Furs, Ltd. ("Polar") is a foreign business entity with its principal place of business at Bellside House, 4 Elthorne Road, London N19 4AG, United Kingdom. Polar is a Fur broker and dealer.
>
> 28. Defendant Zilberkweit is an individual, on information and belief, residing in London, United Kingdom, who at all relevant times was an authorized representative and agent of Defendant Polar Furs, Ltd.

Amended Complaint, Dkt. # 57, ¶¶ 23-24, 27-28.

This is the only mention of these individual defendants by name in the Amended Complaint. The balance of the complaint refers collectively to "defendants," without identifying any specific defendant. Thus, the Amended Complaint alleges that "[d]efendants and their co-conspirators entered into and engaged in a continuing combination and conspiracy to suppress competition by artificially lowering,

ORDER CONTINUING MOTIONS TO
DISMISS - 2

fixing, rigging, maintaining, or stabilizing the auction bids and prices of Furs." *Id.*, ¶ 62. Plaintiffs then describe various acts engaged in by the defendants in furtherance of their conspiracy: concentrating their stays at two hotels in Seattle to maximize opportunity for collusion; agreeing on a maximum acceptable price for lots of furs and "marking the book"; and allocating certain auction lots among themselves, agreeing to submit a low bid, and then splitting the lot among themselves. Amended Complaint, ¶ 63.

With respect to agents and co-conspirators, the Amended Complaint alleges,

> 31. Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation or other entity, the allegation means that the corporation or other entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they have actively engaged in the management, direction, control, or transaction of the corporation's or other entity's business or affairs.
>
> 32. The acts alleged in this complaint to have been done by the Defendants were authorized, ordered, and condoned by their parent companies and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of their business affairs.

Amended Complaint, Dkt. # 57, ¶¶ 31-32.

In moving to dismiss, defendants Fein and Zilberkweit both assert that these allegations are vague and insufficient to establish personal jurisdiction over them, as both are residents of the United Kingdom. Both defendants have filed affidavits detailing the facts supporting their contesting of jurisdiction. Mr. Zilberkweit asserts that he resides in England and has visited the United States a total of five times in the last ten years, for holidays. Declaration of Frank Zilberkweit, Dkt. # 137. He states that "I did not attend, nor was I a bidder, at any of the fur auctions that form the basis of plaintiffs' complaint." *Id*.

Mr. Fein confirms that he is president of Fein & Co., Ltd, an English company which "has sent a representative to the Seattle Fur Exchange." Affidavit of Stephen Fein, Dkt. # 138-2. However, he himself has never attended the fur auction, nor ever been in the State of Washington. *Id*. Nor does he own property in Washington, or have an address or any bank account in Washington. *Id*.

In response to defendants' motions to dismiss, plaintiffs have presented the controverting declaration of Louis Greenberg, president of Global Mink Corporation, a former defendant in this case. Mr. Greenberg has known both Mr. Fein and Mr. Zilberkweit for at least twenty years. Declaration of Louis Greenberg, Dkt. # 152-2, Exhibit A. Mr. Greenberg states that he believes, "although [he] does

ORDER CONTINUING MOTIONS TO
DISMISS - 3

not know this as a fact," that Paul Davis was an employee of Fein & Company in the years 2000 to 2004, and that Tim Everett and Collins Standford were employed by Polar Furs during the same time period. *Id*. Mr. Greenberg attended the American Legends Fur Auction in Seattle between 2000 and 2004 on behalf of Global Mink, and saw Mr. Davis, Mr. Everett and Mr. Standford all placing bids at the auctions. *Id*. Mr. Greenberg concludes that "[f]rom my 46 years in the fur industry, it is my experience that the fur trader and fur broker principals are aware of the actions taken by their employees at the fur auction." *Id.*, ¶ 14. Plaintiffs contend that the facts and beliefs asserted by Mr. Greenberg provide a sufficient basis for the exercise of jurisdiction over the two moving defendants or, at a minimum, to provide a basis for conducting jurisdictional discovery. Defendants argue that Mr. Greenberg's statements are conclusory and not statements of fact which would provide a basis for jurisdiction.

## ANALYSIS

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir.2003). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir.2001) (internal citations omitted). Moreover, for the purpose of this demonstration, the Court resolves all disputed facts in favor of the plaintiff. *Id*.

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996). Here, both the Washington long-arm statute and Rule 4(k)(2) (which is often referred to as the federal long-arm statute) require compliance with due process requirements. *Unocal*, 248 F.3d at 922 (applying Rule 4(k)(2) as a federal long-arm statute). Consequently, under both arguments presented by plaintiffs, resolution turns on due process.

For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions

ORDER CONTINUING MOTIONS TO DISMISS - 4

of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315, (1945). Courts of this circuit employ the following three-part test to analyze whether a party's "minimum contacts" meet the Supreme Court's directive. This "minimum contacts" test is satisfied when (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

The plaintiff bears the burden of satisfying the first two prongs of the "minimum contacts" test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal citations omitted). Under the first prong of the "minimum contacts" test, plaintiffs must establish that each of the individual defendants "has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum." *Bancroft*, 223 F.3d at 1086. The Ninth Circuit Court of Appeals has refined this test to consider whether the defendant has either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum. *Schwarzenegger*, 374 F.3d at 802. Although the courts sometimes use the phrase "purposeful availment" to include both purposeful availment and direction, "availment and direction are, in fact, two distinct concepts." *Id.*

Thus, in order to satisfy the first prong of the "minimum contacts" test, plaintiffs must establish either that each moving defendant (1) purposefully availed himself of the privilege of conducting activities in Washington, or the United States as a whole, or (2) that he purposefully directed its activities toward one of those two forums. *Id*. Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. *Id*. at 803. Evidence of direction generally consists of action taking place outside the forum that is directed at the forum. *Id*. (suggesting evidence of purposeful direction includes activities such as distribution and advertising).

ORDER CONTINUING MOTIONS TO
DISMISS - 5

In *Calder v. Jones*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. 465 U.S. 783 (1984). The courts have referred to this holding as the "Calder effects test." *See, e.g., Bancroft*, 223 F.3d at 1087. To satisfy this test the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id*. at 1088 (citing *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998)).

Even if plaintiffs are unable to show purposeful direction as to Washington, they can still establish jurisdiction over these defendants if the defendants purposefully directed their actions at the United States. This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).[1] *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir.2002). Rule 4(k)(2) is commonly referred to as the federal long-arm statute. *Id*.

The exercise of Rule 4(k)(2) as a federal long-arm statute requires the plaintiff to prove three factors. *Id*. First, the claim against the defendant must arise under federal law. *Id*. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process. *Id*. Here, the first factor is satisfied because plaintiffs' claims arise under the Clayton Act. Should the Court find that defendants are not subject to personal jurisdiction in Washington, or any state court, the second factor would be satisfied. That would leave the third factor, which is due process. The due process analysis is identical to the one discussed above, except here the relevant forum is the entire United States. As with the foregoing

---

[1] Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

F.R.Civ.Proc. 4(k)2).

ORDER CONTINUING MOTIONS TO
DISMISS - 6

analysis, the resolution of this factor depends on whether the defendants' actions were purposefully directed at the United States.

The defendants' declarations summarized above, taken as true for the purposes of the motions to dismiss, do not conclusively establish that they took or directed no purposeful actions toward Washington or the United States. The brief statements by the two defendants are significant in what they omit: they do not deny contact or communication with company employees during the fur auctions, or knowledge of, direction, or participation in the conspiracy to control prices as alleged by plaintiffs. The Court has therefore determined that a period of jurisdictional discovery is necessary to allow plaintiffs to determine relevant facts which would subject these defendants to the jurisdiction of this Court on the plaintiffs' Clayton Act claims. *America West Airlines, Inc., v. GPA Group, Ltd.*, 877 F. 2d 793, 801 (9th Cir. 1989).

Accordingly, it is hereby ORDERED:

(1) Defendants' two pending motions to dismiss shall be continued for three months to allow plaintiffs to conduct jurisdictional discovery. Defendants' motions (Dkt. ## 133, 138) shall be RE-NOTED on the Court's calendar for July 31, 2009.

(2) Plaintiffs may file a supplemental memorandum and supporting declarations or exhibits in opposition to the motions to dismiss on or before July 20, 2009. Defendants' supplemental reply shall be due July 31, 2009.

Dated this 4 day of May, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER CONTINUING MOTIONS TO DISMISS - 7